## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 21-335 |
| | ) | (Civ. No. 24-137) |
| PATTY LYNN MAVRAKIS | ) | |

### Opinion and Order on Motion to Vacate

Presently before the Court is Petitioner Patty Lynn Mavrakis's parallel Motions Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody," ECF Nos. 73 & 78. There are two Motions to Vacate due to Ms. Mavrakis's apparent misunderstanding in responding to the Court's *Miller* Notice. In response to the *Miller* Notice, Ms. Mavrakis stated that she was choosing to withdraw her 2255 Motion and would file an all-inclusive 2255 Motion *at a later date.* However, she filed her apparent "all-inclusive" 2255 as part of her Response to the *Miller* Notice. Upon review of the two 2255 *Motions*, the Court determined that they were nearly identical, with both asserting a primary focus upon the alleged ineffectiveness of Ms. Mavrakis's counsel. Briefing Order, ECF No. 79. In light of Ms. Mavrakis's pro se status, and out of an abundance of caution, the Court chose to treat the claims asserted in both 2255 Petitions as Ms. Mavrakis's 2255 claims. *Id.* .at 2. The government was ordered to respond to all claims asserted in both the 2255 Petition filed at Document No. 73 and to all claims asserted in the 2255 Petition filed at Document No. 78. *Id.* at 3. The government filed its Response, however, the government, on its own, concluded that the claims asserted in the first 2255 Motion were abandoned, and the government did not address said claims. Gov. Resp. at 1 n. 1 (ECF No. 88). In accordance with the Court's prior Order, all claims from both 2255 Motions will be addressed. For the reasons that follow, the 2255 Motions will be denied.

### I.    Background

### A. The Charges and Offense Conduct

Ms. Mavrakis was charged in a three-count Indictment with Embezzlement from a Federal Credit Union, in violation of 18 U.S.C. 657; Wire Fraud, in violation of 18 U.S.C. 1343; and Use of Fire to Commit Federal Felony, in violation of 18 U.S.C. 844(h)(1). The charges arose out of conduct occurring in September 2016, when Ms. Mavrakis was the branch manager for Valley 1st Community Federal Credit Union. On Labor Day, September 5, 2016, surveillance cameras captured Ms. Mavrakis open the Credit Union's safe and spend several minutes working in and around the open safe. The camera captured Ms. Mavrakis move an empty banker's box in front of the safe, which was a location out of view of the camera. Ms. Mavrakis was then observed removing six banker boxes from the Credit Union.

The next day, September 6, 2016, surveillance cameras captured Ms. Mavrakis arriving at the Credit Union and entering the room where the safe was located carrying a banker's box. She did not turn on the lights in the room. After some time had passed, she turned on the lights. Ms. Mavrakis initiated a flash of light, after which smoke rose out of the safe. She then poured bottled water on a fire that had been lit. Ashes of burned currency were discovered inside the safe. The currency was determined to have been burned at a separate location. Ms. Mavrakis then delivered five of the six boxes to the main office of the Credit Union.

Ms. Mavrakis reported that the fire was due to an alarm wire spark; but, an investigation proved that the alarm wire was not the cause. Furthermore, investigators discovered that ten-thousand United States currency bills, totaling approximately $340,200, were missing from the safe. The investigation also revealed that the ten-thousand United States currency bills were not, in fact, burned inside the safe. The day after the fire, Ms. Mavrakis filed an insurance claim for

the burned and missing currency. The sixth banker's box, that was unaccounted for, was

determined to have contained the United States currency taken from the Credit Union safe.

### B. The Plea Colloquy and Plea Agreement

On June 21, 2023, pursuant to a plea agreement, Mr. Mavrakis pleaded guilty to

Count 2 of the Indictment charging her with Wire Fraud. Plea Agr. June 15, 2023, ECF No.

47-1; Tr. June 21, 2023 (ECF No. 86). Ms. Mavrakis acknowledged her responsibility for

the conduct charged in Count 3, Use of Fire to Commit Federal Felony, and further agreed

that such conduct may be considered in calculating the applicable guideline range and in

imposing sentence. Plea Agr. ¶A.2. At the change of plea hearing, after Ms. Mavrakis was

sworn, the Court explained to her as follows:

> THE COURT: Before accepting your guilty plea, there are a number of questions
> I am going to be asking to assure that your plea is valid. If you do not understand
> any of my questions, please tell me, and I will further explain each question to
> you. At any time if you wish to consult with your attorney, Mr. Cuddy, please tell
> me, and I will give you the opportunity to speak with him privately. I give you
> these instructions because it is essential to a valid plea that you understand each
> question before you answer.

Tr. 4-5. Both Ms. Mavrakis and her attorney confirmed that they were able to communicate with

each other without difficulty. Tr. 5. Ms. Mavrakis was determined to be competent to plead. Tr.

7. Thereafter, an extensive colloquy was conducted with Ms. Mavrakis, beginning with a review

of Counts One, Two, and Three of the Indictment. Tr. 8-9. Ms. Mavrakis stated that she

understood the charges and had no questions about them. Tr. 9-10. The Court then explained,

among other things, the rights she would have if she proceeded to trial, and that, by changing her

plea to guilty, Ms. Mavrakis was waiving her right to a trial and giving up other important

3

constitutional rights. Tr. 10-12. Ms. Mavrakis indicated her understanding of the rights she had and the rights she was giving up. Tr. 10-12.

The prosecutor then reviewed the terms of the parties' plea agreement. Tr. 14-16. The prosecutor explained that, according to the plea agreement, Ms. Mavrakis "will enter a plea of guilty at count two of the indictment" and she "acknowledges her responsibility for the conduct charged in count three and stipulates that the conduct charged in that count may be considered by the probation office or by the court in calculating the guideline range and imposing sentence" Tr. 14. The prosecutor then explained that, in accordance with the plea agreement, the "United States agrees to recommend a two-level downward adjustment for acceptance of responsibility," but that it "will not move for an additional one-level adjustment pursuant to USSG § 3E1.1(b)." Tr. 15. Finally, the government recited the parties' agreement as to the applicable guideline range, explaining that the base offense level would be seven, that twelve levels would be added for a loss greater than $250,000 but less than $550,000, that two levels would be added "pursuant to the cross-reference to section 2K1.4(a)(4)," and two levels would be added for abuse of a position of trust. Tr. 15.

The Court then engaged in the following colloquy with Ms. Mavarakis:

THE COURT: Ms. Mavrakis, have you reviewed a copy of the June 15, 2023, plea agreement?
THE DEFENDANT: Yes.
THE COURT: And have you reviewed that plea agreement in detail?
THE DEFENDANT: Yes.
THE COURT: And have you reviewed and discussed that with Mr. Cuddy?
THE DEFENDANT: Yes.
THE COURT: Do you understand the terms and provisions of that plea agreement?
THE DEFENDANT: Yes.

4

> THE COURT: And having heard Mr. Karl present that plea agreement, has he
> accurately presented the terms, the salient terms of that?
> THE DEFENDANT: Yes.

Tr. 16-17. The Court asked Ms. Mavrakis, "have you signed the last page of that plea

agreement indicating your consent to the terms and provisions of that plea agreement?"

Tr. 19. Ms. Mavrakis responded, "Yes." Tr. 19. The Court then asked her: "do you

understand that, by signing that plea agreement today, you agree to the terms that are set

forth in the June 15, 2023, plea agreement?" Tr. 19.  Again, Ms. Mavrakis said, "Yes."

Tr. 19.

The Court explained what the possible maximum penalties were for the offense at Count

Two, as well as the application of the sentencing guidelines in her case. Tr. 21-23. Ms. Mavrakis

and her counsel both agreed that they had discussed how the guidelines might apply to her case.

Tr. 24. The prosecutor and defense counsel agreed that they believed the applicable guideline

range would result in a guideline sentence range of 37 to 46 months' imprisonment. Tr. 24-25.

The prosecutor then set forth the elements of the offense to which Ms. Mavrakis was

pleading guilty, and, in extensive detail, he explained what evidence the government expected to

prove if the case went to trial. Tr. 26-30. When the prosecutor had completed his recitation of

evidence, the Court inquired of Ms. Mavrakis, "do you agree with the prosecution's summary of

what you did," to which Ms. Mavrakis responded, "Yes." Tr. 30. The Court then asked the

following additional questions:

> THE COURT: Do you admit to the facts as have been recited by the government?
> THE DEFENDANT: Yes.
> THE COURT: Are there any additions or corrections you wish to make?
> THE DEFENDANT: No.

Tr. 30.

Before accepting her guilty plea to Count Two, the Court inquired into the voluntary

nature of her plea:

> THE COURT: Has anyone made any threat to you or to anyone else that has
> forced you to plead guilty today?
> THE DEFENDANT: No.
> THE COURT: Has anyone made any promise to you that has induced you to
> plead guilty today?
> THE DEFENDANT: No.
> THE COURT: Has anyone made any prediction or promise as to what I will
> actually sentence you to other than to tell you about the maximum sentence and
> the sentencing guidelines?
> THE DEFENDANT: No.
> THE COURT: Have you been instructed by your attorney, the attorney for the
> government, or anyone else to respond untruthfully to any question I asked today?
> THE DEFENDANT: No.
> THE COURT: Do you understand everything we've discussed today?
> THE DEFENDANT: Yes.
> THE COURT: Ms. Mavrakis, again, are you satisfied in all respects with the
> advice and representation you received from Mr. Cuddy?
> THE DEFENDANT: Yes.

Tr. 31-32. The Court accepted her plea of guilty to Count Two and set a date for the

sentencing hearing. Ms. Mavrakis's plea agreement provided, in part, that Ms. Mavrakis waive

certain rights to raise collateral challenges to her sentence. In particular, Ms. Mavrakis agreed to

waive her right to file a Motion to Vacate Sentence under Title 28, United States Code Section

2255. Plea Agr. ¶ A.8. The agreement, however, permitted Ms. Mavrakis to raise ineffective assistance of counsel claims.

### C.  Sentencing

The Probation Office prepared a Presentence Investigation Report that, in relevant part, concluded that the appropriate sentencing guideline range was 46 to 57 months' imprisonment, instead of the lower range of 37 to 46 months that the parties anticipated would apply. This difference in guideline range was due to the Probation Officer correctly applying a two-level increase to the base offense level pursuant to § 2K1.4(b)(1), which applied because the offense of arson was committed to conceal another offense, specifically embezzlement. Ms. Mavrakis's counsel objected to the addition of two points as  excessive, unnecessary, and contrary to the plea agreement. In response, the Probation Officer maintained that the enhancement was correctly applied. For its part, the government acknowledged that the enhancement was applicable in this case, but agreed with defense counsel, that the United States and Ms. Mavrakis  "negotiated an agreement that intentionally did not include this enhancement." ECF No. 63 at 1. The government further stated that it was "not seeking the enhancement and would have no objection if the Court does not include it in the offense level calculation." *Id.*

At the sentencing hearing the Court acknowledged that in their plea agreement  that the parties intentionally did not include the enhancement under 2K1.4(b)(1). The Court also acknowledged that the government was not seeking the enhancement and had no objection to the Court not considering the enhancement in the offense level calculation. Accordingly, the

Court, while finding that the enhancement applied, did not consider the higher guideline range of 46 to 57 months' imprisonment when imposing sentence.

Prior to sentencing, defense counsel filed a thorough sentencing memorandum advocating that the Court vary below the advisory guideline sentencing range and impose a non-incarceration sentence, with home detention. In addition, the Court was aware of relevant information discussed during the plea hearing, the plea agreement, the Presentence Report, the parties' sentencing pleadings, as well as all information related to competency proceedings. The Presentence Report provided detailed information about Ms. Mavrakis's personal and family history, her physical condition, her mental and emotional health, her education, and her employment record. In addition, defense counsel submitted pertinent information regarding Ms. Mavrakis, including her physical and mental health as well as her personal explanation for why she engaged in the conduct underlying the offense. The government opposed a variance and advocated for imposition of a sentence of imprisonment at the high end of the agreed-upon guideline range of 37 to 46 months. The Court varied from the guideline range and imposed a sentence of 30 months' imprisonment to be followed by one year of supervised release. Following the two-hour sentencing hearing, the Court varied from the applicable guideline range and sentenced Ms. Mavrakis to a term of imprisonment of 30 months, 16 months below the low end of the guideline range. ECF No. 71. Following imposition of sentence, Ms. Mavrakis timely filed the instant motions to vacate.

## II.    Standard of Review

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to

vacate, set aside, or correct a sentence:

> [U]pon the ground that the sentence was imposed in violation of the
> Constitution or laws of the United States, or that the court was
> without jurisdiction to impose such sentence, or that the sentence
> was in excess of the maximum authorized by law, or is otherwise
> subject to collateral attack.

28 U.S.C. § 2255(a). As a remedy, the court must "vacate and set the judgment aside and . . .

discharge the prisoner or resentence him [or her] or grant a new trial or correct the sentence as

may appear appropriate." 28 U.S.C. § 2255(b). Relief under this provision is "generally available

only in 'exceptional circumstances' to protect against a fundamental defect which inherently

results in a complete miscarriage of justice or an omission inconsistent with the rudimentary

demands of fair procedure." *United States v. Gordon*, 979 F. Supp. 337, 339 (E.D. Pa. 1997)

(quoting *Hill v. United States*, 368 U.S. 424, 428 (1962).

A district court is required to hold an evidentiary hearing on a motion to vacate sentence

filed pursuant to 28 U.S.C. § 2255 unless the motion, files, and records of the case show

conclusively that the movant is not entitled to relief. *See* 28 U.S.C. § 2255(b); *United States v.

Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir.

1994). Thus, if the record conclusively negates the factual predicates asserted in support of a §

2255 motion, or if the movant would not be entitled to relief as a matter of law even if the factual

predicates as alleged in the motion are true, an evidentiary hearing is not required. *See*

*Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985). The Court finds

no need for an evidentiary hearing here, as the record conclusively establishes that Petitioner is not entitled to the relief sought in the petition. *See* 28 U.S.C. § 2255.

## III.    Discussion

In her first claim for relief, Ms. Mavrakis argues that she was denied effective assistance of counsel under the Sixth Amendment of the Constitution in a variety of ways. In her second claim for relief, set forth in her second 2255 Motion, Ms. Mavrakis argues that the prosecutor engaged in misconduct that, in part, resulted in Ms. Mavrakis receiving a higher sentence. ECF No. 78, at 5. A review of the parties' plea agreement, the change of plea transcript, the Presentence Investigation Report, and the parties' sentencing submissions, demonstrate that counsel was not ineffective in any aspect. As for her claims of prosecutor misconduct, Ms. Mavrakis waived the right to bring such collateral challenge claims in her plea agreement.

### A.  Ineffective Assistance of Counsel

A "petitioner claiming a deprivation of his or her Sixth Amendment right to effective assistance of counsel must show that: (1) counsel's performance was deficient; and (2) counsel's deficient performance caused the petitioner prejudice." *Ross v. District Attorney of the County of Allegheny*, 672 F.3d 198, 210 (3d Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "To show deficient performance, 'a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness. . . .  The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Ross*, 672 F.3d at 210 (quoting *Harrington v. Richter*, 562 U.S. 86, 104 (2011)). "'[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'"

10

*Hinton v. Alabama*, 571 U.S. 273, 274 (2014) (quoting *Strickland*, 466 U.S. at 690). "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected . . . if they are based on professional judgment." *Strickland*, 466 U.S. at 681. "The Supreme Court directs that our 'scrutiny of counsel's performance must be highly deferential' to avoid holding counsel incompetent because of reasonable strategic or tactical judgments which, with the benefit of tactical hindsight, might prove not to have best served his client's interests." *United States v. Loughery*, 908 F.2d 1014, 1018 (D.C.Cir.1990), quoting *Strickland*, 466 U.S. at 689.

With respect to prejudice, a petitioner must "'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Hinton*, 571 U.S. at 275 (quoting *Strickland*, 466 U.S. at 694); *see also Ross*, 672 F.3d at 210 (quoting *Richter*, 131 S.Ct. at 787).

### 1.  Arguments foreclosed by plea agreement

The claims of ineffective assistance of counsel discussed below are foreclosed by Ms. Mavrakis knowingly and voluntarily entering into the plea agreement, her knowing and voluntary agreement to the prosecutor's summary of the plea agreement and his summary of the factual evidence stated at the plea colloquy, and her knowing and voluntary entry of a guilty plea to Count 2. In other words, had defense counsel taken the actions Ms. Mavrakis claims he should have, such would have been dismissed as contrary to the parties' plea agreement and agreement on the factual conduct underlying the offenses. In addition, had defense counsel taken the actions cited by Ms. Mavrakis, she would not have suffered any

prejudice. The individual allegations of ineffectiveness are discussed below.

### a. The Fire and Burning of Currency

Ms. Mavrakis argues that her counsel was ineffective for failing to argue the amount of money that was destroyed by fire; by failing to argue the fact that the prosecutor said, at sentencing, that only ashes were left after the fire, but no bills; by failing to argue that the fire was not set on purpose; and by failing to state that the auditors never observed a whole banker's box of money, they only saw ashes. Each of these grounds for ineffectiveness concern factual matters that Ms. Mavrakis either agreed to in her plea agreement or agreed to during her plea colloquy, or the claims of ineffectiveness concern matters that would not have affected the sentence.

Ms. Mavrakis first argues that her counsel was ineffective for failing to argue as to the amount of money that was destroyed by the fire. The parties agreed, however, that Ms. Mavrakis was liable for a total of $399,230 in restitution, and that the loss was more than $250,000 but less than $550,000. Plea Agr. ¶¶ C.4.(a) & C.5. During the plea colloquy the prosecutor described the above provisions in open court. Tr. 15. Ms. Mavrakis stated that she understood the provisions of the plea agreement. Tr. 16-17. Defense counsel cannot be ineffective for attempting to argue at sentencing that a different amount of loss or a different amount of restitution applies, than what the parties explicitly agreed to in their plea agreement. Had he made such an argument, it would have been rejected as contrary to the parties' agreement.

Ms. Mavrakis also argues that defense counsel was ineffective for failing to oppose the prosecutor's statement, at sentencing, that after the currency was burned, there were only

ashes left in the box, not bills. During the plea colloquy, the prosecutor explained what evidence the government expected to introduce if the case went to trial. With respect to the burned currency/ashes, he explained that the government's evidence would show that Ms. Mavrakis "placed the ash and burned currency into the safe." Tr. 28. He continued by explaining that the government would be able to prove that the "currency had been burned at some other location and then brought back to the credit union in the bankers box that she carried into the credit union that day." Tr. 28-29. Ms. Mavrakis indicated her agreement with the prosecutor's recitation of the expected evidence. With respect to this ground, Ms. Mavrakis cannot show that she was prejudiced by defense counsel failing to make an argument at sentencing challenging the prosecutor's statement as to ashes in the box after the fire. Moreover, the issue of ashes versus currency has no effect on the ultimate guideline sentencing range and therefore Ms. Mavrakis's cannot show that she was prejudiced.

The same is true with respect to the claim of ineffectiveness based upon defense counsel failing to argue that the fire was not set on purpose. As stated, the prosecutor explained that the plea agreement accounted for an amount of loss that the parties agreed would be used for guideline calculations purposes. Thus, even if defense counsel had argued that the fire was started accidentally, Ms. Mavrakis would have still faced the same guideline calculation based on the agreed-upon amount of loss as expressed in their agreement. Of course, any such argument made prior to sentencing would have been denied as Ms.

Mavrakis had already agreed with the prosecutor's factual recitation as to what she did with respect to the burning of the currency and later events related to said burning.

Finally, the above arguments apply equally to Ms. Mavrakis's claim that defense counsel was ineffective for failing to state that the auditors never observed a whole banker's box of money; they only saw ashes. Ms. Mavrakis cannot establish that she was prejudiced by defense counsel's failure to raise the above issue, and had he raised it, the Court would have denied the argument as contrary to the parties' understanding of the factual conduct as stated, and as agreed to by Ms. Mavrakis, during the plea colloquy.

**b. Failure to Argue for Removal of Points**

Next, Ms. Mavrakis argues that her counsel was ineffective for failing, in one way or another, to argue against increases in her offense level as reported by the Probation Office. She also claims that counsel was ineffective for failing to argue for a one-point decrease in her offense level for acceptance of responsibility. Each of these grounds, alleging ineffectiveness, concern matters that Ms. Mavrakis either already agreed to in her plea agreement or they concern matters that would not have prejudiced Ms. Mavrakis, because they would not have affected the sentence.

**i. Use of Fire to Cover Another Felony Offense**

Ms. Mavrakis argues that her defense counsel was ineffective for failing to argue for the removal of the two-level increase to her offense level for the conduct underlying Count 3 (Use of Fire to Commit Federal Felony) as she did not plead guilty to Count 3.[1] The two-

---

[1] With regard to Ms. Mavraks's claim that defense counsel failed to explain that the fire was an accident, her attorney did include a section in his sentencing memorandum that explained the underlying conduct from Ms. Mavrakis's perspective. Thus, the Court did have Ms. Mavrakis's version of events prior to imposing sentence.

level increase applies because the offense of arson was committed to conceal another offense, specifically embezzlement. While Ms. Mavrakis did not plead guilty to Count 3, she explicitly agreed in her plea agreement to take responsibility for the conduct charged in Count 3.  Further, she stipulated that the conduct charged in Count 3 may be considered by the probation office or by the court in calculating the guideline range and imposing sentence. Plea Agr. ¶A.2; Tr. 14. That aspect of the plea agreement resulted in the two-level increase. Any motion by defense counsel to remove the two-level increase, based upon conduct charged in Count 3, would have been denied, as such an argument goes directly against the terms of the plea agreement. Therefore, defense counsel cannot be ineffective for failing to raise a meritless argument.

In any event, in his presentence filings, defense counsel did argue against the Court applying the two-level enhancement. The prosecutor believed the enhancement was proper, but he too explained that the parties did not contemplate that enhancement as part of the plea agreement. In fact, at sentencing, the Court stated that it would not consider the higher offense level that resulted due to the additional two-level increase, and instead, the Court stated that it would consider the guideline range the parties agreed to in their plea agreement. This ineffectiveness claim is without merit, since there is no prejudice to Ms. Mavrakis. In conclusion, the Court finds that defense counsel was not ineffective in not raising the

argument, and Ms. Mavrakis was not prejudiced, because the Court did not apply the two-level enhancement.

### ii.    Abuse of Position of Trust

Next, Ms. Mavrakis argues that her counsel was ineffective for failing to argue, "as he promised," that the two-level increase for abuse of position of trust should be removed. However, the parties jointly agreed that two levels will be added to the base offense level for "abuse of a position of trust." Plea Agr. ¶ 3B1.3; Tr. 15. There cannot be ineffective assistance of counsel for failing to argue for the removal of a two-level increase in base offense level, where both parties agreed that such would apply. Had counsel raised this argument it would have been summarily dismissed as contrary to the parties' plea agreement.

### iii.    Acceptance of Responsibility as to Count 2

Finally, Ms. Mavrakis argues that defense counsel was ineffective for failing to argue for the additional one-point reduction in her offense level for accepting of responsibility for the wire fraud charge in Count 2. This claim fails because, again, the exclusion of the additional one-point reduction was agreed to in the plea agreement,[2] explained to Ms. Mavrakis in open court,[3] agreed to by Ms. Mavrakis in open court,[4] and ultimately Ms. Mavrakis entered into the plea agreement knowing that this provision applied. Thus, there cannot be ineffective assistance of counsel for failing to argue an issue that was explicitly agreed upon as a part of the parties' agreement. Moreover, setting the parties' agreement

---

[2] "The United States will not move for an additional one-level adjustment pursuant to U.S.S.G. § 3E1.1(b) [for acceptance of responsibility]." Plea Agr. ¶ B.3.
[3] Tr. 15.
[4] Tr. 16-17.

aside for a moment, whether an additional one-level reduction for acceptance of responsibility would apply, in any case, depends upon whether the government chooses to move for the reduction. U.S.S.G. § 3E1.1(b) (providing for a one-level decrease, but *only* "upon motion of the government"). The government chose not to apply for the additional one-point reduction, and that decision was memorialized in the parties' agreement. Thus, defense counsel is not ineffective for failing to pursue a fruitless argument.

### 2. Misleading Promise by Defense Counsel as to Sentence

Next, Ms. Mavrakis argues that her attorney provided ineffective assistance by misleadingly telling her that, if she pleaded guilty to wire fraud*,* she would receive a sentence of probation or home detention. The plea agreement, however, specifically spelled out the parties' agreed-to possible guideline sentence range, concluding that such calculations would result in an offense level of 23 [before a reduction for acceptance of responsibility] and a criminal history category of I." Plea. Agr. ¶ C.5.

During the plea colloquy the Court asked the parties how they believed the sentencing guidelines would apply in this case. Tr. 21-23. Ms. Mavrakis and her counsel agreed that they had discussed how the guidelines might apply to her case. Tr. 24. The prosecutor and defense counsel agreed that the applicable guideline range would result in a guideline sentence range of 37 to 46 months' imprisonment. Tr. 24-25. The prosecutor then explicitly stated that, with a two-level reduction for acceptance of responsibly, the agreed-upon offense level would be 21, and the guideline imprisonment range would be 37 to 46 months. Tr. 25-26. Nothing in the plea agreement prohibited either party from arguing for an appropriate sentence within the guideline range, or for the defense from arguing for a

variance from the guideline range. In fact, defense counsel did argue for a non-incarceration sentence in both his sentencing memorandum and his argument at sentencing. The Court rejected this defense argument.

If, prior to entering into the plea agreement, defense counsel told Ms. Mavrakis that he predicted and/or promised that she would receive a non-incarceration sentence, counsel's prediction was trumped by the plea agreement provisions, and discussion during the plea colloquy about the possible guideline sentencing range. Both the agreement and the plea colloquy served to educate Ms. Mavrakis to the fact that she faced a term of imprisonment, and that no one's prediction of what the sentence would be would interfere with the Judge's duty to sentence within her discretion. During the plea colloquy, it was explained to Ms. Mavrakis that it is the Court who would sentence her:

> THE COURT: If you plead guilty and I accept your
> plea, you will waive your right to a trial and the other
> rights I have just discussed, there will be no trial, and I
> will enter a judgment of guilt and sentence you on the basis
> of your guilty plea after considering a presentence report.
> Do you understand that?
> THE DEFENDANT: Yes.

Tr. 12. The Court further explained to Ms. Mavrakis that, as the sentencing Judge, she is "not bound by any estimation or recommendation of sentencing that's just been presented by the government and by your attorney. I can sentence you up to the maximum sentence [20 years' imprisonment] permitted by statute. You understand that?" Tr. 25. Ms. Mavrakis responded, "Yes," Tr. 25. Critically, the Court asked Ms. Mavrakis: "Has anyone made any prediction or promise as to *what I will actually sentence you to* other than to tell you about the maximum sentence and the sentencing guidelines?" Tr. 31 (emphasis added). This question provided

Ms. Mavrakis with the opportunity to inform the Court that her counsel *had* made a prediction and a promise that she would receive a non-incarceration sentence. Instead, Ms. Mavrakis responded, "No," indicating that no one had made a prediction or promise as to how she would be actually sentenced. Tr. 31. The Court next asked a question designed to find out if Ms. Mavrakis had been ordered to respond untruthfully to her questions: "Have you been instructed by your attorney, the attorney for the government, or anyone else to respond untruthfully to any question I asked today?" Tr. 32. Ms. Mavrakis responded, "No." Tr. 32. The Court then again asked Ms. Mavrakis if she was "satisfied in all respects with the advice and representation you received from Mr. Cuddy?", to which she responded, "Yes." Tr. 32.

Given the above clear and precise agreement as to the applicable imprisonment range, if defense counsel had told Ms. Mavrakis that she would be sentenced to a non-incarceration sentence, it was incumbent upon Ms. Mavrakis to bring her counsel's prediction and promise to the attention of the Court during the plea colloquy. Ms. Mavrakis did not; and instead, she agreed to the recitation regarding the guideline calculations and imprisonment range, she signed her plea agreement, and entered a plea of guilty. Therefore, she cannot establish that she was prejudiced by counsel's promise. The plea agreement, the plea colloquy, and entry of a guilty plea to Count 2, all serve to negate that any such alleged sentencing prediction or promise, which was not disclosed to the Court, was made by defense counsel. Moreover, neither the plea agreement nor the plea colloquy addressed a scenario where the possible punishment included a non-incarceration sentence. The Court told Ms. Mavrakis that the ultimate sentence decision would be determined by the Court, no

matter what anyone else had told her what the sentence would be. Thus, even had defense counsel made a promise to Ms. Mavrakis as to what her actual sentence would be, once the terms of the plea agreement were explained to Ms. Mavrakis, she could no longer have reasonably believed that she would receive such a non-incarceration sentence. Put another way, Ms. Mavrakis cannot be prejudiced by defense counsel's alleged ineffectiveness in predicting the sentence, because Ms. Mavrakis had subsequently agreed to the plea agreement, which provided for a term of imprisonment between 37 and 46 months. By the close of the plea colloquy, Ms. Mavrakis reasonably knew that any promise or prediction of any non-incarceration sentence would have no effect on the punishment the Court would ultimately impose. Therefore, this claim of ineffectiveness will be denied.

### c. Disclosing Confidential Communications to the Prosecutor.

Ms. Mavrakis claims that counsel was also ineffective, because he disclosed confidential communications to the prosecutor. This is a conclusory and unsupported argument. Ms. Mavrakis fails to provide any supporting allegations or explanation as to what was disclosed, when it was disclosed, or how the disclosure prejudiced her. As this claim includes no relevant substantive argument, there is no basis upon which the Court can find that counsel was ineffective.

### d. Claims that Counsel was Ineffective for Failing to Present Arguments in Favor of Mitigation and/or for a Variance

Ms. Mavrakis presents several claims of ineffective assistance of counsel, citing alleged failures of counsel to raise arguments in favor of mitigation and/or for a variance. She claims counsel failed to argue that Ms. Mavrakis was on disability as a result of depression and anxiety;

that she suffered short-term memory loss; that she had lost everything, except her family, and that without them, imprisonment will worsen her depression and anxiety; she was on medication; that she could start paying back restitution if she were on home detention; that the fire was not set on purpose; that she was compliant throughout her nearly three years on pretrial supervision; and that she suffered the detrimental effect of being on pretrial supervision for so long.

Ms. Mavrakis's overall argument is that, if defense counsel had presented one or all of the above arguments, her sentence would have been lower. The Court, however, was already aware of the matters raised by Ms. Mavrakis in her 2255 Petition. The Presentence Report, the competency report, defense counsel's sentencing memorandum, and defense counsel's statements in Court at sentencing, demonstrate that the Court was aware of Ms. Mavrakis's situation as described within her ineffectiveness claims.

Well before the presentence report was prepared, defense counsel raised the issue of Ms. Mavrakis's competency to proceed. Ms. Mavrakis was evaluated by a psychiatrist, Robert M. Wettstein, M.D., who determined that she was competent to proceed. Psych. Eval. Mar. 21, 2023. The psychiatric evaluation report also revealed Ms. Mavrakis's diagnoses, symptoms, behaviors, and medications. In addition, Dr, Wettstein recounted how Ms. Mavrakis had been in a car accident where "she was rear ended, [and] she developed post-concussion symptoms including *forgetfulness*, dizziness, and intermittently *decreased concentration* which have persisted over the years. Psych. Eval. Mar. 21, 2023, at 3 (emphasis added). Dr. Wettstein continued, stating that Ms. Mavrakis "has *persistent forgetfulness* manifested both at work and at home." *Id.* 4 (emphasis added). In addition, he reported that she had significant PTSD, travel anxiety, isolation, and decreased concentration. *Id.* The report went on to list "a history of

generalized anxiety disorder symptoms for many years with an uncertain onset date," excessive worrying, difficulty relaxing, decreased concentration due to anxiety, and poor sleep. *Id.* The report also notes that she had received mental health treatment in the past. *Id.* Dr. Wettstein also identified medications Ms. Mavrakis was taking. Psych. Eval. at 4, 8.

In addition, the Presentence Report contains detailed information on Ms. Mavrakis's physical condition (¶¶48-52) and mental and emotional health (¶¶ 53-54). Relevant to the present claims, the Presentence Report states that Ms. Mavrakis "characterized her mental health as poor. She advised that she was diagnosed with depression and anxiety." PSIR at ¶ 53. The Report also identified the medications she was taking.  PSIR at ¶ 53. In defense counsel's sentencing memorandum, he included a section addressing her health. ECF No. 65, at 6-7 (redacted from public view). The Presentence Report notes that Ms. Mavrakis is collecting Social Security Income (PSIR at ¶ 59) and her counsel reported that she is on Social Security Disability (ECF No. 65, at 8). Defense counsel also informed the Court that Ms. Mavrakis is in "in poor financial condition." ECF No. 65, at 8.

Defense counsel also set forth a narrative of the underlying events from Ms. Mavrakis's point of view (even though portions of the narrative are counter to the agreed-upon facts). ECF No. 65, at 10. In particular, the narrative stated that the fire Ms. Mavrakis set was intended only to burn bank documents, not currency, and that the burning of currency was not on purpose. ECF No. 65, at 10. Finally, as to Ms. Mavrakis's time spent on three years of pretrial supervision, the Court was aware that Ms. Mavrakis was compliant with her terms and conditions and that such a lengthy pretrial period may negatively impact a defendant. However, it is rare that such matters would affect a sentencing decision.

Thus, all matters raised by Ms. Mavrakis in her ineffectiveness claim were presented to the Court prior to imposing sentencing. The Court read the Presentence Report, all parties' filings, and Dr. Wettstein's report. Defense counsel presented argument consistent with his sentencing memorandum, which means he did raise at least some of the issues identified by Ms. Mavrakis, and he argued for a variance to a non-incarceration sentence. Had defense counsel raised all of the matters cited by Ms. Mavrakis, such would not have changed the ultimate sentence, because, the Court already had all the information identified by Ms. Mavrakis before sentence was imposed. Had defense counsel failed to raise the matters identified by Ms. Mavrakis, and such failure was deemed to be ineffective assistance of counsel, the present ineffectiveness claims would still be dismissed as Ms. Mavrakis cannot show she suffered any prejudice. Again, the Court had all the necessary information prior to imposing sentence, even if defense counsel failed to bring any of the information to the attention of the Court.

### B.  Prosecutor Misconduct

In Ms. Mavrakis final claim for relief she argues that the prosecutor committed errors as follows: He gave a two-level increase for fire to conceal a crime that did not happen; he said I didn't take responsibility for my actions, but I pleaded guilty to lying to the insurance company of where the money was burned; he gave a two-level increase for abuse of position of trust, but I did not abuse my position; arson was never committed; Prosecutor agreed to drop embezzlement and Fire, but he still gave increases in offense level for them.

Each of the claims of prosecutor error overlap with Ms. Mavrakis's ineffectiveness claims.  As such, there is no merit to the claims as explained in the prior section. However, the Court need not analyze the claims, because they are barred by the provision in her plea

agreement in which, other than ineffectiveness of counsel claims, she "waive[d] the right to file a motion to vacate sentence under 28 U.S.C. § 2255, attacking her conviction or sentence and the right to file any other collateral proceeding attacking her conviction or sentence." Plea Agr. 8. First, the claims of prosecutor error, as raised by Ms. Mavrakis, are attacks on her sentence, which clearly fall within the scope of her collateral waiver. *United States v. Grimes*, 739 F.3d 125, 129 (3d Cir. 2014). Thus, the collateral attack waiver will be enforced when it is "entered into knowingly and voluntarily and [] enforcement does not work a miscarriage of justice." *United States v. Fazio*, 795 F.3d 421, 425 (3d Cir. 2015).

Having reviewed the plea agreement entered into by the parties and the transcript of the change of plea hearing, Ms. Mavrakis's waiver of her right to collaterally attack her sentence was both knowing and voluntary. Further, enforcing the waiver in this case would not work a miscarriage of justice  As previously discussed, the two-level increase for the Use of Fire to Cover Another Felony Offense was upheld by the Court prior to sentencing; the difference of opinion regarding what factual conduct Ms. Mavrakis was taking responsibility for does not affect the sentence; however, it is noted that Ms. Mavrakis consistently stated that she did not commit the offense in Count 1; the two-level increase for abuse of position of trust was agreed to by both parties and was upheld by the Court; and any increase attributed to use of fire as it relates to embezzlement was also upheld by the Court (again, this two-level enhancement applied, but was not considered by the Court in imposing sentence). For these reasons, enforcing the collateral waiver does not present a miscarriage of justice. Accordingly, the claims of prosecutor error are dismissed.

### C.  Certificate of Appealability

No certificate of appealability should issue in this case. A court should issue a certificate of appealability where a petitioner makes a substantial showing of the denial of a constitutional right. 28 U.S.C. 2253(c)(2). A petitioner meets this burden by showing that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court finds that jurists of reason would not find it debatable whether Petitioner states a valid claim of the denial of a constitutional right and jurists of reason would not find it debatable whether we were correct in concluding that the petition does not present any claims upon which habeas relief may be granted. Therefore, the Court will deny a certificate of appealability.

## IV.    Conclusion

Having found no merit to Petitioner's claims of ineffectiveness of counsel or prosecutor error, Petitioner's Motions to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255 will be denied.

Accordingly, the following order is therefore entered.

## ORDER

AND NOW, this 12th day of May 2025, for the reasons stated above, Petitioner's Motions to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF Nos. 73 & 78) are DENIED.  The court declines to issue a Certificate of Appealability.

    s/*Marilyn J. Horan*
Marilyn J. Horan
United States District Judge

Patty Lynn Mavrakis, pro se
Reg. No. 63417-509
Renewal, Inc.

25

PO Box 23070
Pittsburgh, PA 15222

Patty Lynn Mavrakis, pro se
125 Crawford Lane
Belle Vernon Pa 15012